HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES MOORE,

        Plaintiff,

        v.

UNITED STATES OF AMERICA,

        Defendant.

CASE NO. C13-2063RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on the Government's motion for summary judgment.  Although the Government requested oral argument, Plaintiff James Moore did not, and the court finds this case suitable for partial disposition based on the material already before it.  For the reasons stated below, the court GRANTS the Government's motion in part and DENIES it in part. Dkt. # 32.  Because the court is aware of no factual disputes that would necessitate a trial, the court VACATES the trial date and all other pending pretrial deadlines.  Part IV of this order includes instructions to the parties to supplement the record so that the court may conduct judicial review in accordance with § 706(2) of the Administrative Procedure Act ("APA").

## II.  BACKGROUND

Among the responsibilities of the Internal Revenue Service is the enforcement of a portion of the Bank Secrecy Act of 1970 requiring reports from people within the United States who "make[] a transaction or maintain a relation for any person with a foreign

ORDER – 1

financial agency." 31 U.S.C. § 5314(a).  That statute has led to regulations that require a person subject to the statute in any calendar year (essentially any person residing in the United States with foreign accounts totaling more than $550,000) to file a report with the IRS by June 30 of the following year.  31 C.F.R. § 103.24(a), § 103.27(c).[1]  The IRS has prescribed form TD F 90-22.1 ("Report of Foreign Bank and Financial Account") for that task.  The IRS refers to this yearly report as an "FBAR."  The IRS can impose a civil penalty on a person who fails to file FBARs.  31 U.S.C. § 5321(5)(A).  For non-willful violations, the penalty cannot exceed $10,000.  31 U.S.C. § 5321(5)(B)(i).

Mr. Moore filed this lawsuit to contest the IRS's decision to assess the maximum penalty of $10,000 against him four times, once for each year from 2005 through 2008.

**A.    Mr. Moore Has Had a Foreign Account Since 1989, But He Filed No FBARs Until 2010.**

There is no dispute that for nearly two decades, Mr. Moore maintained a foreign account subject to FBAR requirements.  Its predecessor was an account Mr. Moore opened at a Bahamian bank in about 1989 when he moved to The Bahamas.  He opened that account in the name of a Bahamian corporation that he created (and solely controlled) for the purpose of investing in a resort in The Bahamas.  He soon transferred the balance to an "investment account" with a Bahamian branch of a Swiss bank, again holding the account in the name of his Bahamian corporation.  Mr. Moore moved back to the United States in 1990, but the account remained in The Bahamas.  In about 2003, when the Swiss bank ceased its Bahamian operations, the account migrated to Switzerland, where it has remained ever since.  At all relevant times, the balance in the account exceeded $300,000, but was less than $550,000.

---

[1] The Bank Secrecy Act makes the Secretary of the Treasury responsible for issuing regulations on foreign financial reporting.  31 U.S.C. § 5314(b).  Until 2010, Treasury regulations applicable to FBARs were at Part 103 of Title 31 of the Code of Federal Regulations.  Among other things, those regulations make the IRS responsible for enforcing the statute's reporting requirements.  31 C.F.R. § 103.56(g).  In 2010, those regulations were moved to Part 1010 of Title 31 of the Code of Federal Regulations.  So far as the court is aware, the substance of the regulations relevant to this suit did not change.  The Government relies on the pre-2010 regulations; Mr. Moore does not object.  The court thus cites the older regulations.

ORDER – 2

There is also no dispute that Mr. Moore filed no FBARs until at least 2009.  It was around that time that he became aware of an effort by the IRS to encourage people who had not been reporting foreign accounts to come forward.  *See United States v. Simon*, 727 F.3d 682, 686 (7th Cir. 2013) (describing IRS's 2009 Offshore Voluntary Disclosure Program).  Through his counsel, he approached the IRS.  Ultimately, he amended six years of tax returns (from 2003 through 2008) to report income for each of those years from his foreign account.  Mr. Moore and the Government appear to agree that those amendments increased the taxes he owed by about $18,000.  Even assuming there is any dispute over Mr. Moore's tax liabilities, that dispute is not before the court.  In addition to amending his tax returns, Mr. Moore in 2010 filed late FBARs for 2003 through 2008, as well as his first timely-filed FBAR, for 2009.

**B.    The IRS Investigates, Proposes a $40,000 Penalty, Then Assesses That Penalty.**

At some point, the IRS requested an interview with Mr. Moore.  He agreed, and IRS Agent Shu Lin Tjoa interviewed him, with his counsel present, by telephone in October 2011.  Although Mr. Moore contends that he was not aware that the IRS was considering an FBAR penalty, he admits that he knew that the IRS intended to "enforce something in regards to me."  Moore Depo. at 146-47.  The interview took no more than five minutes.  *Id.* at 147.

Agent Tjoa prepared an FBAR Penalty Summary Memo recommending that the IRS impose a penalty of $10,000 for each of the four years from 2005 to 2008.  Mr. Moore had no access to the Summary Memo until he received it in connection with this lawsuit.  The Summary Memo is an eight-page, relatively detailed account of Agent Tjoa's reasons for recommending a $40,000 penalty.

On December 13, 2011, the IRS sent Mr. Moore a letter stating that it was "proposing a penalty" totaling $40,000.  In contrast to the Summary Memo, the letter provided almost no information about the basis for that penalty.  It identified the

ORDER – 3

applicable portions of the Bank Secrecy Act and the years in question.  It did not explain why the IRS had selected the maximum penalty.  The letter demanded that Mr. Moore either accept the penalty or "request a conference with our Appeals Office" by no later than January 28, 2012.  It also explained that if Mr. Moore did nothing by January 28, 2012, it would "assess the penalty and begin collection procedures."

The IRS ignored the terms of its own letter and assessed a $10,000 penalty against Mr. Moore on January 23, 2012.  That penalty covered only 2005.  Agent Daisy Batman declares that the IRS imposed that penalty after Mr. Moore refused to agree to an extension of the applicable statute of limitations.  No one explains why the IRS did not honor its agreement to delay assessment of the penalty pending the "appeal" deadline. The court assumes, because the parties do not assert otherwise, that the six-year limitations period for assessing an FBAR civil penalty for 2005 would have run on July 1, 2012, six years after the June 30, 2006 deadline for submitting an FBAR for 2005.  31 U.S.C. § 5321(b)(1) ("The Secretary of the Treasury may assess a civil penalty . . . at any time before the end of the 6-year period beginning on the date of the transaction with respect to which the penalty is assessed.").  In any event, the IRS does not argue that a statute of limitations would have expired between its assessment of a $10,000 penalty on January 23, 2012 and the January 28, 2012 response deadline it gave to Mr. Moore.

Mr. Moore requested an "appeal"[2] of the proposed assessment.  Although the IRS had already assessed the 2005 penalty, it is apparent that it permitted Mr. Moore to contest that assessment along with his request that it not impose penalties for 2006 through 2008.  In both his January 2012 request for an appeal and his December 2012 letter in support of the appeal, Mr. Moore's counsel provided detailed argument in support of his request that the IRS either assess no penalty or assess a reduced penalty.

---

[2] When referring to the "appeal" the IRS offered Mr. Moore, the court uses quotation remarks to emphasize that the procedure does not resemble a traditional appeal.  The IRS's December 13, 2011 letter did not impose any penalties, it proposed them.  The IRS's offer of an "appeal" was akin to an order to show cause why it should not impose penalties for the first time.

ORDER – 4

Among other things, counsel insisted that Mr. Moore satisfied the requirements of 31 U.S.C. § 5321(b)(5)(B)(ii)(I), which prohibits the imposition of a penalty for an FBAR violation "due to reasonable cause . . . ." The IRS's response, in a December 18, 2012 letter, was terse:

> Dear Taxpayer:
>
> I have completed my review of your request to adjust the penalty(s) assessed against you. Based on the facts presented, including additional information you submitted, I find that no basis for abatement of the penalty(s) is warranted within the protective framework of reasonable cause. Your case is now closed in Appeals.

The remainder of the letter provided payment information and a statement that Mr. Moore could sue in federal court, along with an invitation to participate in a "Appeals customer satisfaction survey." The letter said nothing about when the IRS would assess the penalties. It assessed $10,000 penalties for 2006, 2007, and 2008 on January 24, 2013.

Mr. Moore filed this suit in late 2013. His complaint contended that the IRS violated the Fifth Amendment's Due Process Clause, the Fourteenth Amendment's Equal Protection Clause, and the Eighth Amendment's Excessive Fines Clause. He also contended that the IRS violated the APA, and that the Bank Secrecy Act unlawfully delegated judicial power to the IRS. He asked for a refund of $10,500 he paid toward the 2005 penalty, and for the court to set aside the remaining $30,000 in penalties.

The Government has moved for summary judgment against all of Mr. Moore's claims, as well as on its counterclaims seeking to reduce the 2006, 2007 and 2008 penalties to judgment. In opposing that motion, he did not mention his equal protection claim or his claim of unlawfully delegated judicial authority. The court deems those claims abandoned.

ORDER – 5

The court reaches the following conclusions as to the Government's request for summary judgment on Mr. Moore's remaining claims:

1) As a matter of law, Mr. Moore committed non-willful violations of the Bank Secrecy Act and its subject to civil penalties in accordance with the Act.

2) The IRS has failed to provide a record from which the court can determine, via the judicial review provisions at § 706(2) of the APA, if it acted arbitrarily or capriciously in determining the amount of the penalties it assessed.

3) The IRS's assessment of penalties did not violate the Due Process Clause of the Fifth Amendment or the Eighth Amendment's Excessive Fines Clause.

This order concludes with instructions to the parties to address the impact of both the IRS's early assessment of the 2005 penalty and the lack of an administrative record that provides an adequate basis for the assessment of all four penalties.

### III.   ANALYSIS

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The court defers to neither party in resolving purely legal questions. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

ORDER – 6

**A.    On De Novo Review, the Court Concludes that Mr. Moore Violated the Law By Not Filing FBARs and is Subject to a Civil Penalty.**

No binding case law provides standards for judicial review of FBAR civil penalty assessments.  The Government's proposal is as follows: the court should determine de novo whether Mr. Moore is subject to an FBAR penalty, but should review the IRS's determination of the amount of that penalty only for abuse of discretion.[3]  The court will adopt the first part of that proposal.  It does so only because Mr. Moore has not objected to de novo review and because no standard of review is more favorable to him.  The court therefore declines to decide whether a court must conduct de novo review of the IRS's assessment of a civil FBAR penalty.

**1.    "Reasonable Cause" is an Escape Hatch for FBAR Penalty Liability.**

The Bank Secrecy Act permits the assessment of penalties for violation of the reporting requirements in 31 U.S.C. § 5314, but mandates that "[n]o penalty shall be

---

[3]A few district court decisions on civil FBAR liability take approaches not dissimilar from what the Government recommends.  In *United States v. McBride*, 908 F. Supp. 2d 1186 (D. Utah 2012), the court adjudicated the Government's suit to collect an FBAR penalty in a bench trial.  Although the trial was de novo, the court did not discuss whether it owed deference to the administrative determination that the defendant had violated the Bank Secrecy Act.  By contrast to its extensive findings and conclusions regarding liability, the court devoted just a paragraph to its conclusion that the penalties the IRS assessed were proper.  *Id.* at 1214.  The court did not discuss the standard of review applicable to the amount of the penalty.

In *United States v. Hom*, No. C 13-03721 WHA, 2014 U.S. Dist. LEXIS 77489 (N.D. Cal. Jun. 4, 2014), the court granted the Government's motion for summary judgment that the defendant was liable for a civil FBAR penalty, suggesting no deference to the IRS's administrative decision that he was liable.  The court deferred to the IRS's assessment of a $40,000 penalty without discussion.

In several decisions in *United States v. Williams*, judges in the Fourth Circuit and the Eastern District of Virginia considered a civil FBAR penalty.  The district court concluded that "a *de novo* standard of review is appropriate given that 31 U.S.C. § 5321 provides for no adjudicatory hearing before an FBAR penalty is assessed."  *United States v. Williams*, No. 1:09-cv-437, 2010 U.S. Dist. LEXIS 90794, at *4 (E.D. Va. Sept. 1, 2010).  The district court initially had no occasion to consider the amount of the penalty, because it concluded after a bench trial that the defendant was not liable for a willful FBAR violation.  The Fourth Circuit reversed, concluding that the trial court had clearly erred in concluding that the defendant did not act willfully.  *United States v. Williams*, 489 Fed. Appx. 655, 660 (4th Cir. 2012).  The appellate panel suggested no concern with the trial court's de novo review.  On remand, the district court reviewed the amount of the penalty "for abuse of discretion under the 'arbitrary and capricious' standard of the Administrative Procedure Act."  *United States v. Williams*, No. 1:09-cv-437, 2014 U.S. Dist. LEXIS 105666, at *4 (E.D. Va. Jun. 26, 2014).

imposed" if "such violation was due to reasonable cause" *and* "the amount of the transaction or balance in the account at the time of the transaction was properly reported." 31 U.S.C. § 5321(a)(5)(B)(ii).  The requirement regarding proper reporting of the transaction or balance is not at issue in this case.  Mr. Moore concedes that he violated the reporting requirements, but contends that the Government cannot penalize him for that violation because he had "reasonable cause."

"Reasonable cause" is nowhere defined in the Bank Secrecy Act or in regulations interpreting it.  That phrase, however, appears repeatedly in statutes governing the IRS's tax assessment role.  For example, 26 U.S.C. § 6664(c)(1) prohibits penalties for any portion of an underpayment of tax "if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion."  Another statute, applicable to foreign trusts, prohibits penalties for "any failure which is shown to be due to reasonable cause and not due to willful neglect."  26 U.S.C. § 6677(d).  And, in the statute that the Government identifies as an analogue, Congress prohibited monthly penalties for failing to file tax returns where "such failure is due to reasonable cause and not due to willful neglect . . . ."  26 U.S.C. § 6651(a)(1).  In 1985, the Supreme Court noted that the meaning of the terms "reasonable cause" and "willful neglect" "ha[d] become clear over the near-70 years of their presence in the statutes."  *United States v. Boyle*, 469 U.S. 241, 245 (1985).  It also noted that regulations defined "reasonable cause" for purposes of § 6651(a)(1).  *Id.* ("[T]he relevant Treasury Regulation calls on the taxpayer to demonstrate that he exercised 'ordinary business care and prudence' but nevertheless was 'unable to file the return within the prescribed time.'").

There is no reason to think that Congress intended the meaning of "reasonable cause" in the Bank Secrecy Act to differ from the meaning ascribed to it in tax statutes. As with the tax statutes, Congress entrusted enforcement of the Bank Secrecy Act to the Treasury Department.  If it intended Treasury to interpret "reasonable cause" differently in the newer statute, it left no clues to which any party has pointed.  The court thus takes

ORDER – 8

guidance from tax statutes and authority interpreting them, and concludes that a person

has "reasonable cause" for an FBAR violation when he committed that violation despite

an exercise of ordinary business care and prudence.

### 2.    Mr. Moore Ignored Notice of His Duty to Report His Foreign Account.

The court now examines the evidence relevant to whether Mr. Moore had

reasonable cause for his FBAR violations.

When the Government posed an interrogatory to Mr. Moore asking for all facts

supporting his assertion of "reasonable cause," he responded as follows:

> [I] established a Bahamian Corporation, Dornlas Hardick Ltd[.,] through
> Graham Thompson Ltd. and capitalized it with $300,000 previously taxed in
> the United States.  [I] believed the establishment of a legal Bahamian
> Corporation was sufficient to isolate the corporate assets from [my] personal
> assets, and that [I] was not required to disclose it on [my] personal tax return.

Gov't Interrog. No. 1.  At his deposition, however, Mr. Moore established that he had no

objective basis for that belief.  Although he contended that in about 1990 he asked

Graham Thompson, the Bahamian law firm who assisted him in incorporating, about the

"tax implications of running a business in the Bahamas and staying an American citizen,"

Moore Depo. at 28, he points to no advice he received that made him believe he was free

from any obligation to report the account to authorities in the United States.  He admitted

that Graham Thompson gave him no advice as to whether it was necessary to report to

United States authorities any account held by his corporation.  Moore Depo. at 55-56.

Indeed, he admitted that Graham Thompson gave him no advice about United States law.

Moore Depo. at 67, 150-51.  Although he steadfastly asserts that he believed that his

corporation shielded him from any responsibility to report the account to the

Government, he admitted that since at least 2003, he has no idea if his corporate entity

still exists.  Moore Depo. at 113-14.  When Mr. Moore's account migrated to

Switzerland, he met with bank representatives, but again declined to ask about his

obligation to report the account to United States authorities.  Moore Depo. at 38, 45.

ORDER – 9

Mr. Moore's tax materials show that he clung to his belief that he did not have to report the account even in the face of plain notice that he was mistaken. Prior to the 2006 tax year, Mr. Moore prepared his own income tax returns. On his Form 1040 for the 2003 tax year, he filled out Schedule B, relating to interest and dividends. Schedule B, which is a single page, contains a section prominently labeled "Foreign Accounts and Trusts." That section contains this statement: "You must complete this part if you **(a)** had over $1,500 of taxable interest or ordinary dividends; or **(b)** had a foreign account; or **(c)** received a distribution from, or were a grantor of, or a transferor to, a foreign trust." The section contained just two questions, one of which was as follows:

> At any time during 2003, did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account? See page B-2 for exceptions and filing requirements for form TD F 90-22.1.

Mr. Moore checked neither "Yes" nor "No" in response. His signature on his Form 1040 is adjacent to a statement that his signature was a declaration, under penalty of perjury, that he had "examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete."

Mr. Moore does not deny that he noticed the portion of Schedule B devoted to foreign accounts; he claims that he believed that because his foreign account was held in the name of his Bahamian corporation, that portion did not apply to him. Moore Depo. at 118-19. Had he at least read page B-2 of the instructions (as the question directed him), he would have discovered that he should answer "Yes" to the question on Schedule B if he "own[ed] more than 50% of the stock in any corporation that owns one or more foreign bank accounts" or if he "had an interest in or signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)." Mr. Moore admitted that he understood, at a minimum, that he owned more than 50% of the stock of his Bahamian corporation. Moore Depo. at 123.

ORDER – 10

Although Mr. Moore did not file schedule B in subsequent years that he prepared his own taxes; his 2003 tax return does not stand alone as evidence of Mr. Moore's refusal to acknowledge his control over his foreign bank account.  Beginning in the 2006 tax year, he used a tax preparer for his returns.  For each of those years, the tax preparer sent Mr. Moore a "tax organizer"—a questionnaire designed to assess Mr. Moore's tax needs.  Mr. Moore completed the questionnaire in its entirety.  The questionnaire for the 2006 tax year is not in the record.  In the questionnaire for the 2007 tax year, in response to a question asking if he had "an interest in or signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account," he checked "No."  He did so again the following year when he filled out the questionnaire for his 2008 tax return.  There is no evidence that Mr. Moore disclosed the existence of his foreign account to his tax preparer.

### 3.  Viewing the Evidence in the Light Most Favorable to Mr. Moore, He Did Not Have Reasonable Cause for His FBAR Violations.

Mr. Moore did not, as a matter of law, have reasonable cause for his failure to file FBARs prior to 2009.  Clinging to advice given in 1989 or 1990 that he admits had nothing to do with United States law is not an exercise of ordinary business care or prudence.  Even if that were not the case, however, no fact finder could conclude that ignoring the question on Schedule B of his 2003 tax return was an exercise of ordinary business care or prudence.  Again, that question asked if he had "signature or other authority over a financial account in a foreign country . . . ."  That phrase is not difficult to understand.  As a matter of law, it placed Mr. Moore at least on notice that he should inquire further as to whether his corporation's foreign account was subject to disclosure.  His decision to avoid further inquiry is not an exercise of ordinary business care or prudence.  He admits that if he had done even the most minimal inquiry (looking on page B-2 of the instructions for form 1040, as his tax form explicitly directed him), he would have learned unequivocally that he needed to report his foreign account.  Mr. Moore's

ORDER – 11

counsel asserts that his client's failure to file FBARs is understandable because FBAR requirements are obscure. That assertion ignores that a simple question on his tax forms was sufficient to inform a reasonable person of the existence of the FBAR requirements. The same is true as to Mr. Moore's responses to the questions on his tax organizer questionnaire for the 2007 and 2008 tax returns, which are further evidence that he did not exercise ordinary prudence. Instead, he clung to a baseless, long-ago-conceived notion that holding a foreign account in a corporate name exempted him from his obligations in the United States. Moore Depo. at 135-36 (testifying that he did not discuss foreign account with his tax preparer because he thought it was "immune from domestic taxes"). Even when Mr. Moore employed a tax preparer, a person whose expertise clearly exceeded his own in terms of determining his legal obligations to the IRS, Mr. Moore declined to disclose the existence of his foreign account.

The only additional evidence Mr. Moore asks the court to consider as evidence of reasonable cause is his "age and ignorance." Moore Depo. at 149. His counsel asserts, without being more specific, that Mr. Moore is in his eighties. That means he was in his seventies when he made the decisions critical to this case. The court has no reason to assume that his age makes him less capable of understanding his tax forms. Even if the court could make that assumption, Mr. Moore's deposition testimony leaves the court with no doubt that, even today, he is a man of ample intelligence. That he did not inquire further into his legal obligations is evidence that he did not have reasonable cause for his FBAR violations, not that he was too old to know better.

The court's conclusion that Mr. Moore did not have reasonable cause, as a matter of law, for his FBAR violations also draws from *United States v. Williams*, 489 Fed. Appx. 655 (4th Cir. 2012) (hereinafter "*Williams II*"). That court considered an appeal from a bench trial in which the district court had held that the defendant did not willfully violate § 5314 of the Bank Secrecy Act. *Id.* (reviewing *United States v. Williams*, No. 1:09-cv-437, 2010 U.S. Dist. LEXIS 90794 (E.D. Va. Sept. 1, 2010), hereinafter

ORDER – 12

"*Williams I*").  The Act permits steeper civil penalties for willful violations of FBAR requirements.  31 U.S.C. § 5321(a)(5)(C).  The appellate court in *Williams* reversed the conclusion that the defendant had not acted willfully, finding that the district court had "clearly erred."  *Williams II*, 489 Fed. Appx. At 660.  Among the evidence the court relied on was that the defendant had testified that he paid no attention to the same question on Schedule B of Form 1040 that Mr. Moore did not answer.  *Id.* at 656-57, 659.  It noted that a taxpayer is charged with knowledge of the contents of his tax return, meaning that a failure to read portions of a tax return was tantamount to a "conscious effort to avoid learning about reporting requirements . . . ."  *Id.* at 659 (quoting *United States v. Sturman*, 951 F.2d 1466, 1476 (6th Cir. 1991)); *see also United States v. Crooks*, 804 F.2d 1441, 1448 (9th Cir. 1986) (noting that taxpayer's "signature on [his tax] return is sufficient to establish knowledge once it has been shown that the return was false").

Much like Mr. Moore, the defendant in *Williams* had answered "no" to a "tax organizer" question asking whether he had signatory authority over a foreign account.  *Id.* at 656.  The court found that to be evidence of conduct meant to mislead.  *Williams II*, 489 Fed. Appx. at 659.  Indeed, the only evidence materially distinguishing the defendant in *Williams II* from Mr. Moore is that defendant pleaded guilty to criminal tax evasion for failing to report the income from the foreign account he had not disclosed.  *Id.* at 657, 660.  That is an important distinction, to be sure, but it does not change the other lessons of *Williams II*.  Evidence that a taxpayer ignored relevant questions on Schedule B and in tax organizers is evidence of willful conduct.  In this court's view, it suffices as a matter of law to demonstrate a lesser FBAR violation – one made without "reasonable cause."

**B.    Section 706 of the APA Guides the Court's Review of the IRS's Assessment of Penalties, Including the Amount of the Penalties.**

Having decided that Mr. Moore is subject to an FBAR penalty, what remains of his suit is his challenge to the IRS's method of assessing the penalty and his challenge to the amount of that penalty.  Again, no binding case law addresses the standard that

ORDER – 13

applies to judicial review of either issue in the context of FBAR penalties.  As the court has mentioned, the Government suggests that the court review the amount of the penalty only for abuse of discretion.  The Government does not mention a standard of review as to the methods it employed to assess Mr. Moore's penalty.  The APA, however, provides a comprehensive guide to the court's review of the IRS's penalty assessments.

### 1.      Parts (A)-(D) of § 702 of the APA Govern Judicial Review in this Case.

The APA makes agency action presumptively subject to judicial review.  5 U.S.C. § 702 ("A person . . . adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.").  The only exceptions are where a statute precludes judicial review or the "agency action is committed to agency discretion by law."  5 U.S.C. § 701(a).  Both are narrow exceptions, *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971), and no one argues that the exceptions apply in this case.

Although the APA creates more than one standard of review, all agency action is subject to review to determine if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A); *Volpe*, 401 U.S. at 413-14.  Similarly, all agency action must meet applicable statutory, procedural, and constitutional requirements.  5 U.S.C. § 706(2)(B)-(D); *Volpe*, 401 U.S. at 414.  In certain circumstances, a court reviews an agency action for "substantial evidence," 5 U.S.C. § 706(2)(E), but no one argues that standard applies here.[4]  *Volpe*, 401 U.S. at 414 ("Review under the substantial-evidence test is authorized only when the agency action is [rulemaking] or when the agency action is based on a public adjudicatory hearing.").  Finally, a court may conduct a de novo trial of facts underlying an agency action, 5

---

[4] The "substantial evidence" standard applies only where the formal administrative adjudication procedures of § 554, § 556, and § 557 of the APA apply.  *Portland Audubon Society v. Endangered Species Comm.*, 984 F.2d 1534, 1540 (9th Cir. 1993).  Those procedures only apply when a statute requires an adjudication, on the record, after the opportunity for an agency hearing.  *Id.*; *see also National Wildlife Found. v. Burford*, 871 F.2d 849, 855 (9th Cir. 1989).  Mr. Moore points to no statute or other authority suggesting that formal adjudication procedures are required before imposing FBAR penalties.

ORDER – 14

U.S.C. § 706(2)(F), but that standard of review applies only where the agency's adjudicative factfinding procedures are inadequate. *Volpe*, 401 U.S. at 415.  Here, the court finds no evidence of inadequate factfinding procedures.  The IRS interviewed Mr. Moore, gave him plain notice of the penalty he was facing, permitted him to contest that penalty before assessing it (except as to the 2005 penalty), and permitted him to present his arguments against the penalty both in a written statement and in a telephone interview.  Taking guidance from other cases finding similar factfinding procedures adequate, the court concludes that the IRS's factfinding was adequate for purposes of avoiding trial de novo via § 706(2)(F) of the APA.  *See Pac. Architects & Eng'rs, Inc. v. Dep't of State*, 906 F.2d 1345, 1348 (9th Cir. 1990); *see also Acumenics Research & Tech. v. Dep't of Justice*, 843 F.2d 800, 805 (4th Cir. 1988) (cited favorably in *Pac. Architects*).

### 2.   No Statute Other than the APA Dictated the Procedures for the IRS to Use to Assess Mr. Moore's Penalties.

The court will consider the IRS's procedures for assessing Mr. Moore's penalties again when it discusses his claim that those procedures violated the Due Process Clause.  For now, the court notes that no codified procedures bind the IRS when it assesses FBAR penalties.  In contrast to well-worn procedures for assessing tax deficiencies, a person searching the Code of Federal Regulations or United States Code for information on the procedure for FBAR penalty assessment will come up nearly empty-handed.  *See Williams. v. Comm'r*, 131 T.C. 54, 57-58 (2008) (noting that because FBAR penalties are beyond the scope of the deficiency procedures of 26 U.S.C. §§ 6212-14, United States Tax Court has no jurisdiction to review their assessment).  The Bank Secrecy Act suggests that penalties must first be "assess[ed]," 31 U.S.C. § 5321(b)(1), and provides that the Government may "commence a civil action to recover a civil penalty assessed" within two years of the assessment," 31 U.S.C. § 5321(b)(2).  Beyond that, statutes and regulations are silent as to what procedure is necessary.  In circumstances like these,

ORDER – 15

agencies have considerable latitude to fashion their own procedures,[5] subject only to constitutional limits. *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 543-44 (1978).

In circumstances where no other law governs agency procedure, only the requirements of the Due Process Clause and § 555 of the APA apply. *Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 654-55 (1990). Section 555 of the APA provides minimal procedural guarantees for "informal adjudication," a phrase that covers agency adjudication not subject to § 554, § 556 and § 557 of the APA. *See id.*; *see also United States v. Iron Mountain Mines*, 987 F. Supp. 2d 1250, 1259 (E.D. Cal. 1997) ("Informal adjudication . . . is a 'residual category including all agency actions that are not rulemaking and that need not be conducted through 'on the record' hearings.'") (quoting *Izaak Walton League v. Marsh*, 655 F.2d 346, 361 n.37 (D.C. Cir. 1981)).

As to Mr. Moore, the only portion of § 555 that is relevant is the requirement that an agency must give "[p]rompt notice . . . of the denial in whole or in part of a written application, petition, or other request . . . made in connection with any agency proceeding." 5 U.S.C. § 555(e). That portion also requires that, "[e]xcept in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial." *Id.* The court has already observed that the IRS's December 2012 statement denying Mr. Moore's "appeal" of its proposed penalties was a very brief statement. For reasons the court now discusses, it concludes that it was not a "brief statement" that satisfied § 555(e).

---

[5] The Internal Revenue Manual contains detailed procedures for the assessment of FBAR penalties, as well as standards for determining the amount of those penalties. *See* IRM 4.26.17 (stating procedures), 4.26.16 (stating substantive standards, including standards for determining penalty amount). The IRM does not have the force of law, *Fargo v. Comm'r*, 447 F.3d 706, 713 (9th Cir. 2006), although the IRS may take guidance from it, *Keller v. Comm'r*, 568 F.3d 710, 720-21 (9th Cir. 2009). No one argues that either the APA or any other source of law required the IRS to follow the IRM when assessing Mr. Moore's FBAR liability. As the court will later discuss, the Agent Tjoa's 2011 Summary Memo stated that she followed the IRM, but the record does not reveal whether the IRS followed it when it ultimately penalized Mr. Moore.

ORDER – 16

### 3.   The Court Cannot, On the Record Before It, Determine if the IRS Acted Arbitrarily, Capriciously or Abused Its Discretion in Assessing the Penalties.

To determine if an agency acted arbitrarily or capriciously or in abuse of its discretion, the court conducts a "thorough, probing, in-depth review." *Volpe*, 401 U.S. at 415. The court presumes that the agency acted correctly, and is not permitted to substitute its judgment for the agency's. *Id.* at 415, 417. The court must nonetheless be certain that the agency acted within the scope of its authority, and its must determine whether the "decision was based on a consideration of relevant factors and whether there has been a clear error of judgment." *Id.* at 415-16; *see also Ocean Advocates v. Army Corps of Engineers*, 361 F.3d 1108, 1118 (9th Cir. 2004) (explaining review under § 706(2)(A) of the APA). The court's conclusion that Mr. Moore lacked reasonable cause is sufficient to answer any question about the IRS's authority to impose penalties.

The court can only guess, however, as to whether the IRS considered relevant factors or made a clear error of judgment. The record before the court contains no administrative explanation of the IRS's decision to impose penalties. The IRS's December 2012 "appeals" letter to Mr. Moore contains three sentences of "explanation" that do nothing to illuminate what the IRS considered or why it arrived at its decision. The letter at least mentions the "reasonable cause" standard; it says nothing at all about why it choose a $40,000 maximum penalty as opposed to a smaller amount. The court looks for a "rational connection between the facts found and the choice [the agency] made." *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 841 (9th Cir. 2003). That connection must, however, come from the administrative record. *Id.*

The administrative record is, with one exception, devoid of any explanation of the IRS's reasons for imposing the maximum penalty. Agent Tjoa's 2011 Summary Memo is in the record before the court, but (so far as the court is aware), Mr. Moore did not see the Summary Memo until the IRS produced it in discovery in this case. Even then, the IRS redacted portions of the Summary Memo. The Summary Memo at least arguably

ORDER – 17

provides an explanation of Agent Tjoa's decision to recommend the maximum penalty. Indeed, Agent Tjoa cited the portions of the IRM that are relevant to determining the amount of an FBAR penalty, and explained many other facets of her recommendation. What the Government ignores in its motion, however, is that the Summary Memo is not an explanation *of the ultimate decision to impose a penalty*.[6]  The Summary Memo was, at least on the record before the court, the basis for the IRS to require Mr. Moore to either accept the assessment of penalty or "appeal" it before the assessment.  The issue before the court is the basis for the IRS's decision to actually impose the penalties.  As to the 2005 penalty, the court can only guess.  The IRS disregarded its own promise and assessed the penalty before Mr. Moore could request an "appeal."

As to its decision on "appeal" to assess four penalties, the IRS has already refused to produce the only document (so far as the court is aware) that addresses the material Mr. Moore submitted in support of his appeal or provides explanation of the reasons for imposing the maximum penalty.  On January 8, 2015, the court denied Mr. Moore's motion to compel production of an "Appeals Memo" that Agent Batman authored at some point in the "appeal" process.  The IRS claimed that the deliberative process privilege protected the Appeals Memo.  The court agreed.  What the court did not know at the time is that the Appeals Memo is apparently the only contemporaneous source of explanation for the IRS's decision to assess maximum penalties against Mr. Moore.

The Government asks the court to rubber-stamp a decision that lacks any explanation in the administrative record.  That the Government offers an explanation for that decision in the briefing before the court is irrelevant.  What the court requires is evidence from which it could conclude that the IRS did not act arbitrarily, capriciously,

---

[6] The APA's informal adjudication procedures exempt a decision "affirming a prior denial" from the requirement that an agency provide a "brief statements of the grounds for denial" of a request for relief.  5 U.S.C. § 555(e).  The Government invokes that section, but does not acknowledge that there is no "prior denial" in the record in this case.  The only denial of Mr. Moore's request that no penalty be imposed came in the December 2012 letter closing the "appeal" process.

ORDER – 18

or in abuse of its discretion when it imposed $40,000 in penalties on Mr. Moore. That evidence is absent.

The court cannot, however, overturn the agency's decision merely because it failed to articulate a basis for it:

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.

*Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). When there is "such failure to explain administrative action as to frustrate effective judicial review, the remedy . . . [is] to obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary." *Camp v. Pitts*, 411 U.S. 138, 142-143 (1973). What is preferable is contemporaneous evidence of the factors the agency considered when it made its decision. *Volpe*, 401 U.S. at 420; *see Alaska Dep't of Environmental Conservation v. EPA*, 540 U.S. 461, 497 (2004) ("Even when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned.") (internal quotations omitted). That may, in appropriate cases, permit the court to rely on contemporaneous evidence (like the Appeals Memo) that the agency did not disclose during the decisionmaking process. For example, in *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 737-38 (D.C. Cir. 2001), the court permitted an agency to supplement its bare-bones written decision with memoranda that explained the basis for that decision. In any event, that is preferable to an after-the-fact rationalization of the agency's decision. *See Volpe*, 401 U.S. at 420.

The court will permit the Government to supplement the record to provide some basis for the court to conduct review of its penalty assessment. Specific instructions for

ORDER – 19

that supplementation will come in Part IV of this order.  For now, the court concludes only that *unless the Government provides evidence articulating its reasons for assessing a maximum penalty against Mr. Moore, the court will have no recourse but to hold that it acted arbitrarily and capriciously*.

The Government may also choose to supplement the record to provide contemporaneous explanation of its decision to assess the 2005 penalty without providing the "appeal" it promised Mr. Moore.  On the record before the court, that decision is baffling.  The only reason the Government offered, its concern that the statute of limitations would expire, is nonsensical on the record before the court.  The statute of limitations would not have expired until at least the end of June 2012; the IRS assessed the penalty in January 2012.  The court acknowledges that the IRS's inexplicable conduct was perhaps harmless.  The IRS apparently considered Mr. Moore's "appeal" of the 2005 penalty just as it considered the "appeal" as to later years.  Nonetheless, the IRS assessed a penalty without providing Mr. Moore the "appeal" it promised.  The Government can perhaps supplement the record to provide an explanation for its failure to honor its promise, or clear explanation that the failure was harmless.  *If it does not, the court will rule that assessing the 2005 penalty in January 2012 was arbitrary and capricious.*

### 4.        The Penalty Assessment Procedures Satisfied the Due Process Clause.

The Due Process Clause requires only "such procedural protections as the particular situation demands."  *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).  Determining what process is necessary requires a consideration of the private interest at stake, the risk that the procedures will lead to an erroneous deprivation of that interest, the probable value of different procedures, and the governmental interest in avoiding unnecessary fiscal or administrative burdens.  *Id.*

The IRS used two procedures.  As to the 2006, 2007, and 2008 penalties, it conducted an interview with Mr. Moore and his counsel to determine his reasons for not filing FBARs, issued a notice proposing to assess $40,000 in FBAR penalties and the

ORDER – 20

opportunity to internally "appeal" that decision before assessment, conducted an "appeal" process where Mr. Moore presented his arguments against imposition of the penalty both in writing and by telephone, and issued a notice of assessment of the penalty. As to the 2005 penalty, the IRS provided no meaningful pre-deprivation review. It nonetheless allowed him to contest the assessment through its internal "appeal" process. Mr. Moore also had the opportunity to seek judicial review of all of the IRS's decisions.

The IRS's penalty assessment procedures served all of the purposes of due process. It ensured that Mr. Moore received notice of the penalty and an opportunity to contest it. *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 13 (1978). No formal trial-like hearing is necessary, it suffices that the Government provided "some kind of hearing" at some time before "finally depriv[ing]" Mr. Moore of his property. *Id.* at 16 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974)). The opportunity that the IRS gave Mr. Moore to present his arguments in writing and by telephone is adequate, under the circumstances. *Id.* at 16 n. 17 (noting that the "opportunity for informal consultation with designated personnel empowered to correct a mistaken determination" is sufficient in some circumstances); *Buckingham v. Sec'y of Dep't of Agriculture*, 603 F.3d 1073, 1082 (9th Cir. 2010) (noting that due process does not always require an adversarial hearing, a full evidentiary hearing, or a formal hearing). The opportunity for judicial review after assessment of the penalties is further insurance against a deprivation of due process. Even as to the 2005 penalty that the IRS assessed without an opportunity for pre-deprivation review, the availability of both the opportunity to contest that assessment in the administrative "appeal" and to obtain later judicial review satisfies due process. *See Memphis Light*, 436 U.S. at 19-20 (explaining that post-deprivation review suffices in some circumstances).

Mr. Moore offers no cogent argument that these procedures are inadequate. He neither cites *Mathews* nor attempts to conduct the analysis it requires. His invocation of the Due Process Clause consists of just four objections: (1) that the IRS's use of its own

ORDER – 21

employees to assess penalties means that their decisions are biased, (2) that even the explanation Agent Tjoa provided in the Summary Memo is inadequate support for the penalties she assessed, (3) that the IRS's terse notice of the denial of his "appeal" violated due process, and (4), that the IRS's attempts to collect on its penalties before judicial review violated due process.

It is long-settled that an agency's use of its own employees to investigate and adjudicate matters entrusted to it does not necessarily violate due process. *Withrow v. Larkin*, 421 U.S. 35, 55-56 (1975). There is no evidence that any of the IRS employees involved in assessing penalties against Mr. Moore bore any bias against him. *See Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995) (stating requirements for proving that an agency decisionmaker had a bias sufficient to deny a petitioner due process).

Mr. Moore's second and third objections conflate the lack of an adequate explanation for the IRS's decisions with a violation of due process. Even the IRS's bare-bones notice that it was denying Mr. Moore's appeal sufficed to inform him that penalties had been assessed and that his only remaining recourse was judicial review. Mr. Moore cited no authority for the proposition that the Due Process Clause requires more.

Mr. Moore's final objection is that the IRS denied him Due Process by attempting to collect on its penalties without permitting him to complete judicial review. Once the IRS assessed its penalties, they began to accrue interest and perhaps additional penalties for non-payment.[7] Nonetheless, the Due Process Clause prohibits enforcement of an administrative decision in advance of judicial review only where "the practical effect of coercive penalties for noncompliance [is] to foreclose all access to the courts." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 218 (1994). Mr. Moore offers no evidence that the interest and penalties he may accrue are so punitive as to leave him with no realistic

---

[7] The IRS asserts in its reply brief that as to the 2005 penalty, it did not begin to assess interest or demand payment until Mr. Moore's "appeal" was complete. Mr. Moore had no opportunity to respond to that assertion. The parties should clarify this point in their supplemental briefing. If the Government's assertion is correct, Mr. Moore likely suffered no prejudice as a result of the IRS's premature assessment of the 2005 penalty.

ORDER – 22

choice except to pay the assessments.  He decries that the Government has threatened to garnish his Social Security benefits to pay the penalties.  There is no evidence that the Government has attempted to make good on that threat.  Even if it had, there is no evidence that Mr. Moore could not remedy the harm from garnishment with a decision in his favor in this court.

### 5. Even the Maximum Penalty the IRS Assessed Does Not Violate the Eighth Amendment.

Finally, the court considers Mr. Moore's contention that the $40,000 penalty violates the Excessive Fines Clause of the Eighth Amendment.  The court assumes without deciding that civil FBAR penalties are "fines" within the meaning of the Eighth Amendment, *i.e.* "punishment for an offense."  *United States v. Bajakajian*, 524 U.S. 321, 328 (1998).  Even under that assumption, the penalties are invalid only if they are "grossly disproportional to the gravity of the defendant's offense."  *Id.* at 337.  Although no rigid inquiry governs the court's proportionality inquiry, it should consider the "severity of the offense, the statutory maximum penalty available, and the harm caused by the offense."  *Horne v. Dep't of Agriculture*, 673 F.3d 1071, 1081 (9th Cir. 2011), *rev'd on other grounds at* 133 S.Ct. 2053 (2013); *see also United States v. Mackby*, 339 F.3d 1013, 1016-19 (9th Cir. 2003).

Mr. Moore falls well short of convincing the court that his FBAR penalties are disproportionate to his offense.  He failed to report an account worth between $300,000 and $550,000.  A small penalty is unlikely to serve as much deterrent for a person holding an account of that size.  In *Bajakajian*, the defendant forfeited the entirety of about $350,000 in currency because he failed to report it before transporting it out of the country.  *Id.* at 324-25.  The Court found that to be an excessive fine.  *Id.* at 337.  The court has no reason to believe it would have reached the same conclusion as to a fine nearly an order of magnitude smaller.  Mr. Moore would forfeit about 10% of the value of his account for failing to report it.  That does not strike the court as disproportional,

ORDER – 23

much less grossly disproportional.  Admittedly, the Government has wholly failed to point out the harm that Mr. Moore's failure to report caused, and has given the court no basis to compare the severity of Mr. Moore's offense to similar violations.[8]  Nonetheless, Congress authorized both the FBAR reporting mandate and penalties of up to $10,000 without regard to the size of the unreported account.  The court concludes that the Government's interest in enforcing its laws is at least roughly proportional to the penalty it imposed here.  *See Mackby*, 339 F.3d at 1019 (noting the government's cost of enforcing the law against the person as justification for a fine).  The court has no basis to conclude that Mr. Moore's $40,000 penalty is grossly disproportionate.

## IV.  SUPPLEMENTAL BRIEFING

No later than 14 days following the issuance of this order, the parties shall meet and confer.  They shall discuss, at a minimum, whether they can reach agreement as to supplementing the record in accordance with this order.

No later than 28 days following the issuance of this order, the Government shall supplement the record.  Its supplementation shall consist solely of the following:

1) A brief of five pages or fewer that describes contemporaneous evidence for the IRS's penalty assessment decision, or, alternatively, proposes other evidence from which the court could conclude that the IRS did not act arbitrarily, capriciously, or in abuse of its discretion in assessing the maximum penalty against Mr. Moore.

2) A declaration or declarations containing the contemporaneous or other evidence described in the brief.

No later than 14 days following the Government's supplementation of the record, Mr. Moore may submit a brief of five pages or fewer addressing (in light of the expanded

---

[8] Mr. Moore points out that his liability for the unpaid taxes on the account, even including penalties, was smaller than his FBAR penalty.  That is beside the point.  FBAR is not a tax requirement, it is a requirement that allows the Government to track accounts held abroad.  Nothing prevents Congress or the IRS from choosing to penalize that reporting offense more harshly than underpayment of taxes.

ORDER – 24

record) whether the IRS's penalty assessment was arbitrary, capricious, or an abuse of discretion.

## V.  CONCLUSION

For the reasons stated above, the court GRANTS the Government's motion for summary judgment (Dkt. # 32) in the following respects:

1) The court rules that Mr. Moore violated the Bank Secrecy Act by failing to file FBARs for 2005 through 2008, and that he had no reasonable cause for that violation.  He is subject to the assessment of a civil penalty.

2) The court grants summary judgment against Mr. Moore's claims invoking the Due Process Clause and Excessive Fines Clause.

3) The court rules that Mr. Moore abandoned any claim based on the Equal Protection Clause of the Fourteenth Amendment or based on Congress's allegedly unlawful delegation of judicial power to the Treasury Department or the IRS.

What remains undecided is Mr. Moore's claim invoking the APA and requesting that the court set aside or otherwise modify the IRS's assessment of penalties in accordance with that Act's judicial review provisions at 5 U.S.C. § 706.  The parties shall comply with Part IV of this order to bring that claim to a resolution.  Because the court has no indication that there are factual disputes appropriate for resolution at a trial, the court VACATES the trial date and all deadlines related to trial preparation.

DATED this 1st day of April, 2015.

*Richard A Jones*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 25